Opinion
SOVEN, J.
Defendant was charged with violating Los Angeles Municipal Code section 151.04 (demanding excess rent). Defendant demurred to the complaint, the demurrer was overruled, defendant submitted the matter on the undisputed facts, and he was found guilty and placed on probation. The sole issue is whether those provisions of the Los Angeles City Rent Control Ordinance regulating security deposits are preempted by Civil Code sections 1950.5 and 827. We conclude those provisions are not preempted by state law and are valid.
Defendant landlord rented an apartment to the tenants in 1975 for $175 monthly and obtained a security deposit for $175. Defendant increased the rent over the years but did not demand an increase in the security deposit. In 1992, the lawful rent charged was $437.50, and defendant demanded that the tenants pay an additional amount, about $248, so that the security deposit equalled the current rent.[1] The tenant complained to the City of Los Angeles rent control authorities, whose position was that the landland was entitled to an increase of about $22, because rent could not be increased by more than 5 percent annually.
The Los Angeles City Rent Control Ordinance includes “security deposits” in the definition of rent (L.A. Mun. Code, § 151.02), provides a procedure for determining the rate and level of maximum rent adjustments (L.A. Mun. Code, § 151.07), and limits rent increases, at that time to 5 percent annually. (See L.A. Mun. Code, § 151.06(D).) Civil Code section 1950.5 generally regulates security deposits and provides a landlord may not demand “security” in an amount exceeding two months’ rent for an unfurnished apartment, and Civil Code section 827 allows a landlord to change the terms of a month-to-month tenancy on thirty days’ notice.
*Supp. 9 Discussion
“California cities are free to adopt various forms of rent control under broad constitutional tolerance. [Citations.]” (Tri County Apartment Assn. v. City of Mountain View (1987) 196 Cal.App.3d 1283, 1286 [242 Cal.Rptr. 483].) Defendant, recognizing that the city has the right to control rent, contends the state has impliedly preempted the legislative area of “security deposits” through the enactment of Civil Code section 1950.5.
Civil Code section 1950.5 defines and regulates the use of “security for a rental agreement for residential property „ . . (Civ. Code, § 1950.5, subd. (a).) The section provides, as relevant, that “security” means “any payment, fee, deposit or charge, including, but not limited to, an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following,” and lists compensation for a tenant’s default, repair of damages to the premises, cleaning upon termination of the tenancy, and to remedy future defaults. (Civ. Code, § 1950.5, subd. (b).) The section limits the amount the landlord may demand as “security, however denominated, in an amount or value in excess of an amount equal to two months’ rent, in the case of unfurnished residential property . . . .” (Civ. Code, § 1950.5, subd. (c).) The section specifies how the security may be used by the landlord, when the security must be refunded to the tenant, how the security may be transferred if the property is sold, the penalties for noncompliance with the section, and the manner of proving a security deposit. (Civ. Code, § 1950.5, subds. (e)-(n).)
A legislative intent to preempt a field will be inferred only if “ ‘ “(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; [or] (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.” ’ [Citations.]” (Fisher v. City of Berkeley (1984) 37 Cal.3d 644, 708 [209 Cal.Rptr. 682 [693 P.2d 261].)
In this case, although the state has in Civil Code section 1950.5 defined and regulated the use of security deposits, nothing in that section shows an intention to fully and completely occupy the field of security deposits. The statute itself appears to invite local regulation in certain areas. Security, for example, is defined to mean any payment, fee, deposit or *Supp. 10 charge, including, but not limited to, an advance payment of rent, . . . used for any purpose, including, but not limited to, any of the following (Civ. Code, § 1950.5, subd. (b), italics added.) Moreover, the limitation of security to an amount “equal to two months’ rent” (ibid.) tends to negate any intention to occupy the field, since the Legislature regulates but allows local rent control programs. (See, e.g., Civ. Code, §§ 1947.7-1947.15.)
Second, that the subject matter has been partially covered by general law does not clearly indicate that a paramount state concern will not tolerate further or additional local action. Civil Code section 1950.5, as discussed, defines security in terms of “rent,” but those provisions limiting the maximum amount of security would not be frustrated by a local rent control ordinance which specifies the maximum allowable increases in rent. (See Fisher v. City of Berkeley, supra, 37 Cal.3d 644, 709.)
Finally, the limitation on the lawful amount of an increase in security has no apparent effect on transient citizens. Indeed, the Los Angeles rent control law does not apply to hotels and related housing accommodations for occupancy of less than 60 days. (L.A. Mun. Code, § 151.02.)
We conclude that a local law governing the rate of increases in security deposits is not preempted by Civil Code section 1950.5.
Defendant next contends the challenged provision is preempted by Civil Code section 827, which provides, as relevant, that the “landlord may .... change the terms of the lease .... to take effect at the expiration of not less than 30 days . . . .” The contention is without merit. A landlord may not, for example, increase the rent on 30 days’ notice if the unit is subject to local rent control. (See, e.g., Birkenfeld v. City of Berkeley (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001].) The local interest in regulating rent remains the same, whether rent means the periodic amount paid to occupy a premises or the amount advanced as security for those premises. In both instances, the locality seeks to control both the frequency and the rate of rent increases to protect the tenant from excessively burdensome demands.
Defendant’s reliance on Tri County Apartment Assn. v. City of Mountain View, supra, 196 Cal.App.3d 1283 is misplaced. There, the issue was whether a local ordinance requiring 60 days’ notice of a rent increase was preempted by Civil Code section 827, specifying 30 days’ notice. The court considered all the state laws relating to notice, and concluded: “Landlord-tenant relationships are so much affected by statutory timetables governing the parties’ respective rights and obligations that a ‘patterned approach’ by *Supp. 11 the Legislature appears clear.” (196 Cal.App.3d at p. 1296.) No such patterned approach appears in connection with security deposits. Moreover, the linkage of security to rent, a subject of local regulation, negates any suggestion of a patterned approach and preemption.
The judgment is affirmed.

The numbers do not quite add up but the exact figures are not at issue.