Filed 2/14/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SAN FRANCISCO APARTMENT ASSOCIATION et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>Defendants and Appellants. | A149919<br><br>(San Francisco County<br>Super. Ct. No. CPF-16-515087) |

To reduce the number of no-fault evictions of families with children and educators during the school year, the City and County of San Francisco and the San Francisco Board of Supervisors (collectively, the City) barred such evictions. The trial court concluded state law preempted this ordinance and the City appeals. We agree with the City that the ordinance is not preempted, and reverse.

BACKGROUND

In April 2016, the City enacted Ordinance No. 55-16 (the Ordinance). The Ordinance begins with a series of findings: low- and middle-income households displaced by no-fault evictions often cannot afford to remain in the City; "[s]tudies overwhelmingly demonstrate that moving homes in the middle of a school year can be harmful for children"; school teachers and other staff "tend to be especially vulnerable to displacement due to salary limitations"; and "mid-year evictions of school staff disrupt relationships that are important to children, interfere with the learning process, and burden our schools." The Ordinance therefore seeks to "reduc[e] the number of evictions

during the school year of families with children, and of teachers and other school staff . . . . by regulating the timing of certain no-fault evictions."

To this end, the Ordinance amends San Francisco Administrative Code section 37.9, subdivision (j)(1), to provide: "It shall be a defense to an eviction under Sections 37.9(a)(8) [owner move-in], (a)(9) [condominium conversion], (a)(10) [permanent removal of the unit from housing use], (a)(11) [capital improvements ], or (a)(12) [substantial rehabilitation] if a child under the age of 18 or any educator resides in the unit, the child or educator is a tenant in the unit or has a custodial or family relationship with a tenant in the unit, the tenant has resided in the unit for 12 months or more, and the effective date of the notice of termination of tenancy falls during the school year."[1]

---

[1] The following definitions were amended or added by the Ordinance: " 'Custodial relationship' means, with respect to a child and a tenant, that the tenant is a legal guardian of the child, or has a court-recognized caregiver authorization affidavit for the child, or has provided full-time custodial care of the child pursuant to an agreement with the child's legal guardian or court-recognized caregiver and has been providing that care for at least one year or half of the child's lifetime, whichever is less. [¶] 'Educator' means any person who works at a school in San Francisco as an employee or independent contractor of the school or of the governing body that has jurisdiction over the school, including, without limitation, all teachers, classroom aides, administrators, administrative staff, counselors, social workers, psychologists, school nurses, speech pathologists, custodians, security guards, cafeteria workers, community relations specialists, child welfare and attendance liaisons, and learning support consultants. [¶] 'Family relationship' means that the person is the parent, grandparent, brother, sister, aunt, or uncle of the child or educator, or the spouse or domestic partner of such relations. [¶] 'School' means any state-licensed child care center, state-licensed family day care, and/or any public, private, or parochial institution that provides educational instruction for students in any or all of the grades from kindergarten through twelfth grade. [¶] 'School year' means the first day of instruction for the Fall Semester through the last day of instruction for the Spring Semester, as posted on the San Francisco Unified School District website for each year." (S.F. Admin. Code, § 37.9, subd. (j)(4).)

Prior to enactment of the Ordinance, San Francisco Administrative Code section 37.9, subdivision (j) provided a defense to owner move-in evictions if a child under 18 resided in the unit and had a custodial or familial relationship with a tenant, the tenant had resided in the unit for 12 or more months, and the effective date of the notice of termination fell during the school year.

Following the Ordinance's enactment, the San Francisco Apartment Association and the Small Property Owners of San Francisco Institute, two nonprofit organizations representing San Francisco property owners (collectively, Property Owners), filed a petition for writ of mandate alleging the Ordinance "is facially invalid because it is preempted by State laws governing landlord-tenant notification procedures and timetables governing the parties' respective rights and obligations, including the timing of the right to terminate tenancies where the landlord has otherwise complied with all state and local *substantive* requirements necessary to terminate the tenancy." The trial court agreed the Ordinance was preempted and issued a writ of mandate commanding the City not to enforce or apply it.

## DISCUSSION

" ' "The issue of preemption of a municipal ordinance by state law presents a question of law, subject to de novo review." ' " (*Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1224 (*Coyne*).) " ' "Under article XI, section 7 of the California Constitution, '[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general [state] laws.' [¶] 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' [Citations.]" ' [Citation.] [¶] ' " 'The first step in a preemption analysis is to determine whether the local regulation explicitly conflicts with any provision of state law. [Citation.]' " ' [Citation.] ' "A conflict exists if the local legislation ' "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." ' " ' " (*Ibid.*)

" '[W]hen local government regulates in an area over which it traditionally has exercised control . . . California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute. [Citation.] The presumption against preemption accords with our more general understanding that "it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication."

3

[Citations.]' [Citation.] 'The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption.' " (*Coyne, supra,* 9 Cal.App.5th at p. 1225.)

I. *The Ordinance is Not Preempted Under* Birkenfeld

The Property Owners contend the Ordinance is preempted by the state's unlawful detainer statutes (Code Civ. Proc., § 1159 et seq.). The relevant framework is set forth in *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129 (*Birkenfeld*), in which the plaintiff argued a local law limiting the grounds for eviction of rent-controlled tenants was preempted by the unlawful detainer statutes. (*Id.* at pp. 147, 149.) Our Supreme Court rejected the argument with the following reasoning: "The purpose of the unlawful detainer statutes is procedural. The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end. In contrast the charter amendment's elimination of particular grounds for eviction is a limitation upon the landlord's property rights under the police power, giving rise to a substantive ground of defense in unlawful detainer proceedings. The mere fact that a city's exercise of the police power creates such a defense does not bring it into conflict with the state's statutory scheme. . . . [T]he statutory remedies for recovery of possession and of unpaid rent [citations] do not preclude a defense based on municipal rent control legislation enacted pursuant to the police power imposing rent ceilings and limiting the grounds for eviction for the purpose of enforcing those rent ceilings." (*Id.* at p. 149.)

In contrast, another provision of the local law challenged in *Birkenfeld* required landlords to obtain a certificate of eviction from the rent control board before commencing unlawful detainer proceedings. (*Birkenfeld, supra,* 17 Cal.3d at p. 150.) To obtain such a certificate, the landlord bore the burden of proving the existence of permissible grounds for eviction, proper notice to the tenant, and that there were " 'no outstanding Code violations on the premises' other than those 'substantially caused by the present tenants.' " (*Ibid.*) Moreover, the board was required to notify the tenant of the landlord's certificate application, the tenant was entitled to a hearing, and both parties

4

were entitled to judicial review of the board's decision to grant or deny the certificate. (*Ibid.*) The Supreme Court concluded, "[u]nlike the limitations . . . upon the grounds for eviction, which can affect summary repossession proceedings only by making substantive defenses available to the tenant, the requirement of a certificate of eviction raises procedural barriers between the landlord and the judicial proceeding." (*Id.* at p. 151.) "The summary repossession procedure [citation] is intended to be a relatively simple and speedy remedy that obviates any need for self-help by landlords. [Citations.] To require landlords to fulfill the elaborate prerequisites for the issuance of a certificate of eviction by the rent control board before they commence the statutory proceeding would nullify the intended summary nature of the remedy." (*Ibid.*)

Thus, under *Birkenfeld,* "municipalities may by ordinance limit the substantive grounds for eviction by specifying that a landlord may gain possession of a rental unit only on certain limited grounds. [Citations.] But they may not procedurally impair the summary eviction scheme set forth in the unlawful detainer statutes . . . ." (*Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 754 (*Rental Housing*).) The Property Owners argue the Ordinance is procedural because it governs the *timing* of notices of eviction: "The Ordinance does not limit the allowable justifications for evicting tenants; it only delays certain evictions." Such questions of timing, they contend, are purely procedural. The City argues the Ordinance is substantive because timing is merely a component of the substantive defense to eviction: "When the household to be evicted includes a child under the age of 18 or an 'educator' within the terms of the Ordinance, 'good cause' for a landlord to undertake any of the specified types of no-fault evictions does not exist unless the eviction is to take effect during the summer months."

As this case illustrates, "the distinction between procedure and substantive law can be ' "shadowy and difficult to draw" in practice.' " (*Vaughn v. LJ Internat., Inc.* (2009)

174 Cal.App.4th 213, 221.)[2]  The Ordinance has a substantive component, effectively creating a new group protected from certain no-fault evictions: children who are or could be attending school or day care (excluding summer school or summer day care)[3] and educators employed while children are attending school.  The Ordinance also has an impact on procedure, restricting the timing of evictions of children and educators.

*Rental Housing, supra,* also involved an ordinance not easily defined as substantive or procedural.  The ordinance in that case "require[d] that tenants be provided notice and an opportunity to cure any offending conduct before a landlord may resort to eviction.  Where an eviction is brought due to a tenant's substantial violation of a material term of the tenancy, disorderly conduct, or refusal to allow the landlord access to the unit, the landlord must have provided the tenant prior written notice to cease the offending behavior.  [Citation.]  Similarly, a tenant may be evicted for willfully causing substantial damage to the premises only if, after written notice from the landlord, the tenant 'has refused to cease damaging the premises, or has refused to either make satisfactory correction or to pay the reasonable costs of repairing such damage over a reasonable period of time.'  [Citation.]  The warning notices are to 'be served by the landlord prior to a notice to terminate tenancy,' and they must 'include a provision informing tenant that a failure to cure may result in the initiation of eviction proceedings.'  [Citation.]  [Provisions in the ordinance] impose certain content

---

[2] Indeed, the procedural-substantive distinction is elusive at best.  (See *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1542 ["the substance-procedure terminology is problematic because those labels are difficult to apply as mutually exclusive categories"]; *People v. Flaherty* (1990) 223 Cal.App.3d 1139, 1143 ["The determination whether a given law makes a procedural or substantive change can be difficult."]; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 45 [describing "the difficult and controversial preliminary determination whether the matter is one of procedure or substance"].)

[3] The Ordinance applies to all children under 18, whether or not they are currently attending school or day care.  The Property Owners have raised no challenge specifically targeting this aspect of the Ordinance, nor have they raised any challenge other than state law preemption.

requirements on a notice to terminate tenancy and require that a copy of the notice be filed with the [local rent board]." (*Rental Housing, supra,* 171 Cal.App.4th at p. 762.)

The court rejected an argument that these provisions were procedural for purposes of *Birkenfeld*'s preemption analysis: "The warning notice requirements [in the ordinance] limit a landlord's right to initiate an eviction due to certain tenant conduct by requiring that the specified conduct continue after the landlord provides the tenant written notice to cease. These notice requirements thus regulate the substantive grounds for eviction, rather than the procedural remedy available to the landlord once grounds for eviction have been established. If the tenant ceases the offending conduct once notified by the landlord, there is no good cause to evict. The requirements for a warning notice are therefore not preempted by the unlawful detainer statutes. As the court stated in *Birkenfeld*, a city, pursuant to its police power, may place substantive limitations on otherwise available grounds for eviction, but not procedural ones. [Citation.] Unlike the certificate of eviction that was invalidated in *Birkenfeld*, the warning notice requirements of [the ordinance] do not involve prefiling review by a local administrative agency or impose 'elaborate prerequisites' on the commencement of an unlawful detainer proceeding." (*Rental Housing, supra,* 171 Cal.App.4th at pp. 762–763, fn. omitted.)

*Rental Housing* is instructive. The ordinance imposed an indisputably procedural requirement—prior written notice with specified content. Although the court did not discuss the impact on timing in its preemption discussion, this notice requirement imposed an inherent delay on a landlord's unlawful detainer remedy. (*Rental Housing, supra,* 171 Cal.App.4th at p. 763 [ordinance did not specify the time a tenant must be allowed to cure; rent board regulations provided a minimum of 7 days].) But this procedural requirement was imposed in order to "regulate the substantive grounds" for certain evictions, where tenants continue prohibited conduct after notification from the landlord, "rather than the procedural remedy available to the landlord once grounds for eviction have been established." (*Id.* at p. 763.)

The Ordinance is significantly less procedural than the ordinance upheld in *Rental Housing*. Unlike that ordinance, the Ordinance does not impose any procedural

7

requirements: it does not require landlords to provide written notice or to do any other affirmative act. Instead, it simply has a procedural *impact*, limiting the timing of certain evictions. Moreover, this procedural impact—like the procedural requirement in *Rental Housing*—is necessary to "regulate the substantive grounds" of the defense it creates. The purpose of the Ordinance is to protect children from the disruptive impact of moving during the school year or losing a relationship with a school employee who moves during the school year. When tenants belong to this protected group (or have a custodial or familial relationship with a resident protected group member), they have a substantive defense to eviction; when they no longer belong to the group—because the regular school year has ended or will have ended by the effective date of the notice of termination—they no longer have a substantive defense. At this time, landlords may avail themselves of the unlawful detainer procedures, which are not altered by the Ordinance. Thus, the Ordinance is a permissible "limitation upon the landlord's property rights under the police power," rather than an impermissible infringement on the landlord's unlawful detainer remedy. (*Birkenfeld, supra,* 17 Cal.3d at p. 149.) We conclude the Ordinance is substantive for purposes of *Birkenfeld*'s preemption analysis.

The Property Owners contend the Ordinance is procedural because, unlike substantive defenses to eviction, it "is wholly unrelated to the merits or substance, and simply restricts *when* the landlord may recover possession." But this is also the case for other defenses to eviction which the Property Owners concede are "substantive" for preemption purposes. For example, landlords are precluded from certain evictions *when* the tenant is a member of a protected group, such as being catastrophically ill, or *when* a comparable unit owned by the landlord is vacant and available. (S.F. Admin. Code, § 37.9, subds. (a)(8)(iv), (i)(1)(B).) The Property Owners argue these defenses are distinguishable because they "limit the circumstances under which landlords may recover possession." However, the Ordinance does precisely the same.

The Property Owners also argue if the Ordinance is upheld as substantive, "nothing would prevent San Francisco from mandating that all for-cause terminations occur on one day a year . . . ." Although the issue is not before us, an ordinance limiting

8

the timing of *all* evictions would appear to be preempted by the unlawful detainer statutes. Such an ordinance would not be imposed in order to regulate any substantive grounds for eviction, like the Ordinance. The Ordinance does not impose such a blanket requirement independent of any substantive defenses to eviction. Instead, the Ordinance is a substantive defense with an impact on timing.[4]

Accordingly, we conclude the Ordinance is not preempted by the unlawful detainer statutes.

## II. *The Ordinence is Not Preempted under* Tri County *and* Channing

The Property Owners also rely on two cases, *Tri County Apartment Assn. v. City of Mountain View* (1987) 196 Cal.App.3d 1283 (*Tri County*) and *Channing Properties v. City of Berkeley* (1992) 11 Cal.App.4th 88 (*Channing*). These cases primarily involve state statutes other than the unlawful detainer statutes, and therefore do not employ the procedural-substantive framework established in *Birkenfeld*. Instead, they stand for the general proposition that various state laws preempt the field of the timing of landlord-tenant transactions.

*Tri County* concluded that an ordinance requiring landlords give 60 days' notice of rental increases in month-to-month tenancies was preempted. (*Tri County, supra,* 196 Cal.App.3d at pp. 1289, 1298.) The court discussed a state law, Civil Code section 827, which provides that a landlord may change the lease terms of a month-to-month tenancy with 30 days' notice, and concluded the ordinance "adopts the same purpose as the statute, i.e., appropriate notification, but then changes the statewide chronology to suit its own agenda." (*Tri County,* at p. 1296.) The court continued: "[Civil Code] [s]ection 827 represents only one part of the legislative expression about when landlords and tenants may assert their rights and must meet their obligations." (*Id.* at p. 1297.) After setting

---

[4] The Property Owners also argue if the Ordinance is upheld, the City could extend similar protections to other groups, for example, an ordinance preventing the eviction of restaurant workers during the tourist season. As the City conceded at oral argument, any such ordinance would be subject to a constitutional challenge. We note the Ordinance's findings identified specific studies "demonstrat[ing] that moving homes in the middle of the school year can be harmful for children."

forth numerous such statutes, the court concluded, "the extensive scheduling provided by the Legislature reveals that *the timing of landlord-tenant transactions* is a matter of statewide concern not amenable to local variations. The [o]rdinance directly conflicts with the legislative scheme." (*Id.* at pp. 1297–1298, italics added.)

*Channing* concluded that an ordinance requiring landlords intending to withdraw their units from the rental market to provide six months' notice to tenants was preempted by the Ellis Act (Govt. Code, § 7060 et seq.). (*Channing, supra,* 11 Cal.App.4th at pp. 92, 97.) The court noted the Ellis Act "preempts local action with regard to substantive controls over landlords who wish to withdraw all accommodations from the residential rental housing market while specifying areas in which local governments may regulate in a manner consistent with the [Ellis] Act." (*Channing,* at p. 94.)[5] Moreover, while the Ellis Act's only provision about providing notice to tenants is to permit municipalities to require 60 days' notice to public entities and notification to tenants that the public entity had been notified, "[b]y carefully spelling out certain types of notice which public entities may require, the [Ellis] Act clearly indicates that *only* these types are authorized and other, additional notice requirements are not permissible." (*Channing,* at p. 96.) The court also referenced *Tri County*'s conclusion that " 'the extensive scheduling provided by the Legislature reveals that the timing of landlord-tenant transactions is a matter of statewide concern not amenable to local variations.' [Citation.] Without reference to the [Ellis] Act, the notice due a tenant from a landlord wishing to terminate the tenancy is specified in Civil Code section 1946 as at least as long as the term of the tenancy, not exceeding 30 days, or at least 30 days for a month to month tenancy; notice requirements in the case of an unlawful detainer are prescribed by Code of Civil Procedure section 1161. The [Ellis] Act establishes a special circumstance in which local governments may impose a longer notice requirement than would otherwise be permissible—the 60 days specified in [Govt. Code] section 7060.4—but does not

_____

[5] The Ordinance does not apply to Ellis Act evictions. (See S.F. Admin. Code, § 37.9, subds. (a)(13), (j).)

10

authorize further extended notice requirements.  The City's six-month notice requirement is preempted by the [Ellis] Act." (*Channing,* at pp. 96–97, fn. omitted.)

*Roble Vista Associates v. Bacon* (2002) 97 Cal.App.4th 335 (*Roble Vista*) distinguished *Tri County*.  The ordinance in that case required landlords to offer new and renewing tenants a one-year lease and established the failure to do so as a defense to eviction of that tenant.  (*Roble Vista,* at p. 338.)  The appellate division of the superior court found the ordinance preempted under *Tri County,* characterizing it as effectively " 'requir[ing] a one-year notice to quit rather than the thirty days provided by state statute.' " (*Roble Vista,* at pp. 340–341.)  The Court of Appeal rejected this characterization: "In our view, the [o]rdinance requires that a landlord offer a one-year lease, thus addressing the duration of the lease.  The [o]rdinance does not specify the amount of notice that must be given to terminate a tenancy.  Accordingly, the present case is readily distinguishable from *Tri County*." (*Id.* at pp. 340–341, fns. omitted.) Thus, while the ordinance in *Roble Vista* had an *impact* on the timing of landlord-tenant transactions, that impact was incidental to the regulation of lease terms, an area the court found to be within the municipality's police powers.  (*Id.* at p. 341.)[6]

The Property Owners argue that the Ordinance, like the preempted ordinances in *Tri County* and *Channing,* "requir[es] landlords to wait longer to recover possession than allowed by state law," pointing to Civil Code section 1946.1, subdivision (b), which requires 60 days' notice of termination to tenants with month-to-month tenancies.  But unlike the ordinances in *Tri County* and *Channing* and Civil Code section 1946.1, the Ordinance does not specify an amount of notice required to terminate a tenancy.  Instead, as discussed above, it establishes a permissible substantive defense to eviction that (like

---

[6] The court also rejected a challenge that the eviction defense provision was preempted by the unlawful detainer statutes under *Birkenfeld*: "[T]he [o]rdinance provides a substantive defense to eviction.  The [o]rdinance states that the landlord's failure to comply with its provisions provides the tenant with 'a defense in any legal action' to recover possession or collect rent.  [Citation.]  Nothing in the [o]rdinance interferes with the procedure for bringing an eviction action under [the unlawful detainer statutes]." (*Roble Vista, supra,* 97 Cal.App.4th at p. 342.)

11

some other substantive defenses to eviction) impacts when landlords may evict. *Roble Vista* instructs that where an ordinance regulates in an area within the municipality's police powers and does not conflict with a state statute, its incidental impact on the timing of landlord-tenant relations does not alone render it preempted under *Tri County* and *Channing*. Such is the case here. We conclude the Ordinance is not preempted under *Tri County* and *Channing*.

## DISPOSITION

The judgment is reversed. Appellants shall recover their costs on appeal.

_____
SIMONS, Acting P.J.

We concur.

_____
NEEDHAM, J.

_____
BRUINIERS, J.

(A149919)

13

Superior Court of the City and County of San Francisco, No. CPF-16-515087, Hon. Ronald E. Quidachay, Judge.

Dennis J. Herrera, City Attorney, Wayne K. Snodgrass, Deputy City Attorney, for Defendants and Appellants.

Zacks, Freedman & Patterson, Andrew M. Zacks and James B. Kraus, for Plaintiffs and Respondents.