Filed 9/11/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAN FRANCISCO APARTMENT ASSOCIATION et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>      Defendant and Appellant. | A166228<br><br>(San Francisco Super. Ct. No. CPF-22-517718) |
| SAN FRANCISCO APARTMENT ASSOCIATION et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>      Defendant and Respondent. | A166359<br><br>(San Francisco Super. Ct. No. CPF-22-517718) |

In 2022, the San Francisco Board of Supervisors (Board) passed an ordinance that created a longer notice timeline for landlords pursuing at-fault evictions. Plaintiffs San Francisco Apartment Association and Small Property Owners of San Francisco Institute sought a writ of mandate enjoining defendant City and County of San Francisco from enforcing the ordinance as preempted by state law. The trial court granted the petition in part, concluding that the ordinance was preempted only to the extent it changed the notice timeline for one type of at-fault eviction: nonpayment of

1

rent. Plaintiffs and defendant each appealed. We affirm in part and reverse in part, concluding that the entire ordinance is preempted by state law.

BACKGROUND

### A. *Unlawful Detainer Statutes*

Code of Civil Procedure sections 1159 to 1179a,[1] collectively known as the Unlawful Detainer Act, govern "the procedure for landlords and tenants to resolve disputes about who has the right to possess real property." (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394 (*Stancil*).) An action for unlawful detainer is a summary proceeding. (*Barela v. Superior Court* (1981) 30 Cal.3d 244, 249.) "Given society's interest in swiftly resolving the balance between a tenant's right to enjoy leased real property without disturbance and a landlord's right to ownership income, unlawful detainer actions advance quickly—and the relevant statutes impose shorter procedural timelines than the ones governing other civil actions." (*Stancil*, at p. 390.) "These proceedings are limited in scope and demand strict adherence to the statutes' procedural requirements." (*Ibid.*)

Section 1161 describes the circumstances under which a tenant is guilty of unlawful detainer and may be evicted, including nonpayment of rent, breach of a material term of the lease or agreement, nuisance, and use of the premises for illegal purpose. (§ 1161, subds. (2)–(4); *Stancil, supra*, 11 Cal.5th at p. 395.) Before filing a complaint for unlawful detainer based on nonpayment of rent, a landlord must provide the tenant with a three-day notice to pay rent or quit. (§ 1161, subd. (2).) For unlawful detainer based on breach of a material term of the lease or agreement, a landlord must provide the tenant with a three-day notice requiring performance of those conditions

---

[1] Further undesignated statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

to save the lease or agreement from forfeiture.  (*Id.*, subd. (3).)  For unlawful detainer based on nuisance or use of the premises for illegal purpose, a landlord must provide the tenant with a three-day notice to quit.  (*Id.*, subd. (4).)

### B.  *San Francisco Rent Ordinance*

In 1979, the Board enacted a "comprehensive rental-housing ordinance" in chapter 37 of the San Francisco Administrative Code.[2]  (*Danekas v. San Francisco Residential Rent Stabilization and Arbitration Bd.* (2001) 95 Cal.App.4th 638, 641.)  The Rent Ordinance was "necessitated by what the Board of Supervisors perceived as a housing crisis in the City and County of San Francisco."  (*Golden Gateway Center v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (1999) 73 Cal.App.4th 1204, 1211.)  "The crisis was caused by uncontrolled rent increases which had the effect of either displacing tenants who could not pay increased rents or forcing tenants to expend less on other of life's necessities in order to pay increased rents."  (*Ibid.*)  "The essential purpose of the ordinance was to regulate rents, so that tenants would not be subjected to excessive rent increases."  (*Ibid.*)

The Rent Ordinance also includes restrictions on the grounds for eviction.  San Francisco Administrative Code section 37.9, subdivision (a) recognizes various "just cause" requirements for which a landlord may recover possession of a rental unit.  The first six grounds relate to situations where a tenant is at fault:  (1) nonpayment of rent; (2) substantial breach of lease or agreement and failure to cure after written notice; (3) severe, continuing nuisance or damage that is specifically stated in writing;

---

[2] The applicable provisions of the San Francisco Administrative Code are referred to as the San Francisco Residential Rent Stabilization and Arbitration Ordinance (Rent Ordinance) (codified as S.F. Admin. Code, ch. 37).

(4) illegal use of rental unit, except where illegality is lack of authorization for residential occupancy or a first violation of Rent Ordinance provisions regarding tourist and transient use cured after written notice; (5) tenant refusal to execute written extension or renewal of lease or agreement after written request or demand; and (6) tenant refusal, after written notice, to allow landlord access to rental unit.

As of 2021, San Francisco Administrative Code section 37.9, subdivision (c) required that landlords should not seek to recover possession of a rental unit under these six grounds unless "the landlord informs the tenant in writing on or before the date upon which notice to vacate is given of the grounds under which possession is sought."

## C. *Ordinance No. 18-22*

In February 2022, the Board passed Ordinance No. 18-22 that amended portions of the Rent Ordinance. The "Purpose and Findings" section of Ordinance No. 18-22 stated: "The Rent Ordinance recognizes that tenants owe certain obligations to their landlords, and that a tenant's failure to meet those obligations may under certain conditions give the landlord just cause to evict. But the Rent Ordinance generally does not specify for how long a tenant's misconduct must continue before it rises to the level of being a just cause. This ambiguity creates confusion, and is particularly harmful to tenants, as some landlords claim that a tenant's violation instantly creates just cause to evict even if the tenant just made an innocent mistake or is able to correct the issue. A cure period would reduce the undue hardship suffered by tenants who face sudden evictions and promote economy in the use of judicial resources, while still protecting the property owners by curing the harm. It is essential to provide clarity around what constitutes just cause: if a tenant can correct the violation within a reasonable timeframe, to

4

nevertheless evict the tenant and put them at risk of permanent displacement from the City is not appropriate."

Ordinance No. 18-22 amended San Francisco Administrative Code section 37.9 of the Rent Ordinance in two respects. First, it amended section 37.9, subdivision (c) to provide that for notices to vacate under the first six "just cause" requirements for evictions where a tenant is at fault, a landlord "shall prior to serving the notice to vacate provide the tenant a written warning and an opportunity to cure as set forth in Section 37.9(o)." Second, it added section 37.9, subdivision (o) to provide that these six grounds for eviction "shall not apply unless the violation is not cured within ten days after the landlord has provided the tenant a written warning that describes the alleged violation and informs the tenant that a failure to correct such violation within ten days may result in the initiation of eviction proceedings." Ordinance No. 18-22 became effective on March 14, 2022.

### D. *Petition for Writ of Mandate*

On March 21, 2022, plaintiffs sought a writ of mandate enjoining defendant from enforcing Ordinance No. 18-22. Plaintiffs argued that Ordinance No. 18-22 conflicted with, and thus was preempted by, state law. Pursuant to section Code of Civil Procedure section 1161, landlords were entitled to serve a three-day notice to pay/perform or quit and then invoke their unlawful detainer remedy. Plaintiffs argued that Ordinance No. 18-22 created an impermissible conflict because it gave tenants an additional 10-day notice and cure period.

### E. *Judgment*

The trial court granted the petition in part. It found that "to the extent it creates a longer period to cure or quit for non-payment of rent, Ordinance No. 18-22 is in direct conflict with Code of Civil Procedure section 1161, and

5

is thereby preempted by state law as it applies to notices for non-payment of rent only." But it found "a split of authority as to the allowable notice periods for notices other than for the non-payment of rent."

The trial court explained that *Tri County Apartment Association v. City of Mountain View* (1987) 196 Cal.App.3d 1283 (*Tri County*) "supports the invalidation of any extended notice period involving fault-based evictions." In *Rental Housing Association of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741 (*Rental Housing*), however, the appellate court "permitted Oakland to interpose an additional, extended notice period for cases involving substantial violation of a material term of the tenancy, disorderly conduct, or refusal to allow the landlord access to the unit." The trial court determined that it was bound by *Rental Housing* and thus limited the issuance of the writ to notices for non-payment of rent only. It concluded: "Petitioners will have to look to the higher courts if they wish to resolve the conflict between Tri County and Rental Housing."

Plaintiffs and defendant each filed a timely notice of appeal.

## DISCUSSION

The sole legal question presented in this appeal is whether Ordinance No. 18-22 is preempted by Code of Civil Procedure section 1161. " ' "The issue of preemption of a municipal ordinance by state law presents a question of law, subject to de novo review." ' " (*Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1224.) We begin with general principles regarding preemption.

### I. General Preemption Principles

"In California, preemption of local legislation by state law is a constitutional principle." (*Sequoia Park Associates v. County of Sonoma* (2009) 176 Cal.App.4th 1270, 1277.) Article XI, section 7 of the California

6

Constitution provides that a county or city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." But " ' "[i]f otherwise valid local legislation conflicts with state law, it is preempted by such law and is void." ' " (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1067.)

" 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Sherwin–Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 (*Sherwin–Williams*).) Here, plaintiffs claim that there is conflict through either (1) contradiction or (2) implied field preemption.

Local legislation "is 'contradictory' to general law when it is inimical thereto." (*Sherwin–Williams*, *supra*, 4 Cal.4th at p. 898.) "The 'contradictory and inimical' form of preemption does not apply unless the ordinance directly requires what the state statute forbids or prohibits what the state enactment demands." (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743 (*Riverside*).) "Thus, no inimical conflict will be found where it is reasonably possible to comply with both the state and local laws." (*Ibid.*)

Local legislation enters an area that is " 'fully occupied' by general law" when the Legislature has implied its intent to do so. (*Sherwin–Williams*, *supra*, 4 Cal.4th at p. 898.) There are three "recognized indicia" of such implied intent: " '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of

7

such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality." (*Ibid.*)

The Legislature's implied intent to occupy the field to the exclusion of local legislation " ' "is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme." ' " (*O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at p. 1068.) " ' "Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the entire control over whatever phases of the subject are covered by state legislation ceases as far as local legislation is concerned." ' " (*Ibid.*) " ' "State regulation of a subject may be so complete and detailed as to indicate an intent to preclude local regulation." ' " (*Ibid.*) Examination to infer legislative intent to occupy the field is "made with the goal of ' "detect[ing] a patterned approach to the subject." ' " (*Sequoia Park Associates v. County of Sonoma*, *supra*, 176 Cal.App.4th at p. 1279, quoting *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 708 (*Fisher*).)

With these general principles in mind, we turn to the parties' preemption arguments.

## II.  Preemption Arguments

Plaintiffs argue that Ordinance No. 18-22 is preempted by state law based on either (1) direct contradiction of Code of Civil Procedure section 1161, or (2) implied field preemption.  As for direct contradiction, plaintiffs explain that section 1161 sets out a procedural timeline for unlawful detainer.  This timeline provides tenants with three days' notice to pay rent/perform or quit.  (§ 1161, subds. (2)–(4).)  Ordinance No. 18-22, however, extends that timeline by requiring a written warning with 10 days to cure prior to serving any notice under section 1161.  In other words, tenants have a minimum of 13 days to cure under Ordinance No. 18-22 instead of three

8

days under section 1161.  As for implied field preemption, plaintiffs argue that state statutes regarding landlord-tenant notification show the Legislature's intent to fully occupy the field.

To oppose these arguments, defendant relies on the framework set forth by the California Supreme Court in *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129 (*Birkenfeld*).  In that case, landlords challenged an initiative amendment to Berkeley's city charter.  (*Id.* at p. 135.)  The court addressed "two kinds of restraint upon eviction proceedings" imposed by the amendment.  (*Id.* at p. 147.)  First, the amendment limited "the grounds upon which a landlord may bring an action to repossess a rent-controlled unit" to breaches of duty by tenants (e.g., nonpayment of rent, nuisance, use for illegal purpose, and refusal of access), good faith withdrawal from the rental market, or tenant refusal to execute renewal of lease.  (*Ibid.*)  Second, the amendment required that a landlord "obtain a certificate of eviction from the rent control board before seeking such repossession."  (*Ibid.*)  The landlords argued that both restraints were preempted by state law.  (*Id.* at p. 148.)

As for the limitations on the grounds for eviction, the landlords argued that they conflicted with section 1161, subdivision (1), which provides that a landlord may pursue an unlawful detainer action where a tenant continues in possession after expiration of the rental term.  (*Birkenfeld, supra*, 17 Cal.3d at p. 148.)  The California Supreme Court explained that these provisions are "not necessarily in conflict" if the *purpose* of the state statute is "sufficiently distinct" from that of the local legislation.  (*Id.* at p. 149.)  The court determined that the purpose of unlawful detainer statutes, including section 1161, is "procedural."  (*Birkenfeld*, at p. 149.)  These statutes "implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end."

9

(*Ibid.*)  The amendment, in contrast, eliminated particular grounds for eviction, "giving rise to a *substantive* ground of defense in unlawful detainer proceedings." (*Ibid.*, italics added.)  The court reasoned that the city's exercise of its police power to create such a defense "does not bring it into conflict with the state's statutory scheme." (*Ibid.*)  For example, tenants may raise other substantive defenses (like a landlord's breach of the warranty of habitability) in an unlawful detainer action for nonpayment of rent.  (*Ibid.*)  Accordingly, the court concluded that remedies under the unlawful detainer statutory scheme "do not preclude a defense based on municipal rent control legislation enacted pursuant to the police power imposing rent ceilings and limiting the grounds for eviction for the purpose of enforcing those rent ceilings." (*Ibid.*)

As for the certificate of eviction, however, the process to obtain such a certificate from the rent control board before unlawful detainer proceedings could commence required a different conclusion. (*Birkenfeld*, *supra*, 17 Cal.3d at p. 150.)  Before issuing that certificate, the board must provide notice to the tenant, who then has five days to request a hearing. (*Ibid.*)  If the tenant requests such a hearing, it must be scheduled within seven days, and the board must make a decision five days after the hearing. (*Ibid.*)  A tenant (or landlord) may also seek judicial review of the decision. (*Ibid.*)

*Birkenfeld* determined that this certificate requirement was preempted by the unlawful detainer statutes that provide "a summary procedure for exercising their rights of repossession against tenants." (*Birkenfeld*, *supra*, 17 Cal.3d at p. 151.)  The court explained:  "Unlike the limitations imposed by the charter amendment upon chargeable rents and upon the grounds for eviction, which can affect summary repossession proceedings *only by making substantive defenses available* to the tenant, the requirement of a certificate

10

of eviction raises *procedural barriers* between the landlord and the judicial proceeding." (*Ibid.*, italics added.) The court reasoned that, unlike a substantive defense to eviction, landlords could not "meet the defense" by showing that they could have qualified for the certificate had they applied for it. (*Ibid.*) Instead, the certificate requirement would "preclude" a landlord from relief in summary repossession proceedings altogether. (*Ibid.*) *Birkenfeld* thus concluded that the certificate requirement "cannot stand in the face of state statutes that fully occupy the field of landlord's possessory remedies." (*Id.* at p. 152.)

Here, the parties disagree about where Ordinance No. 18-22 falls in the procedural-substantive framework from *Birkenfeld*. Plaintiffs argue that the ordinance is procedural because it extends the notice timeline from Code of Civil Procedure section 1161. Defendant, on the other hand, argues that the ordinance is substantive because it limits the grounds for eviction as an appropriate exercise of the city's police power and therefore is not in conflict with section 1161. As set forth below, we agree with plaintiffs.

### III. Ordinance No. 18-22 is Procedural

We begin our *Birkenfeld* analysis with the well-recognized principle that " 'the distinction between procedure and substantive law can be " 'shadowy and difficult to draw' in practice." ' " (*San Francisco Apartment Assn. v. City and County of San Francisco* (2018) 20 Cal.App.5th 510, 516 (*Educators*).) Indeed, it has been described as "elusive at best." (*Id.* at p. 516, fn. 2, citing *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1542 [noting substance-procedure terminology "is problematic because those labels are difficult to apply as mutually exclusive categories"]; *People v. Flaherty* (1990) 223 Cal.App.3d 1139, 1143 ["The determination whether a given law makes a procedural or

substantive change can be difficult"]; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 45 [describing "the difficult and controversial preliminary determination whether the matter is one of procedure or substance"].)

Law is not necessarily procedural or substantive because it " 'takes a seemingly procedural [or substantive] form.' " (*In re Jackson* (1985) 39 Cal.3d 464, 471.) The classification is difficult to draw in the real world because law can be substantive but still have a "procedural *impact*." (*Educators*, *supra*, 20 Cal.App.5th at p. 518.) As the United States Supreme Court has explained, "Except at the extremes, the terms 'substance' and 'procedure' precisely define very little except a dichotomy." (*Sun Oil Co. v. Wortman* (1988) 486 U.S. 717, 726.) Moreover, while *Birkenfeld* focused on *purpose* of the state statute versus the local regulation, the California Supreme Court has cautioned that "Purpose alone is not a basis for concluding a local measure is preempted." (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 190.) An ordinance's *purpose* may be relevant to whether it is preempted by state law, but such consideration must be done "in the context of a nuanced inquiry" into "whether the *effect* of the local ordinance is in fact to regulate in the very field the state has reserved to itself." (*Ibid.*, italics added.)

To determine whether Ordinance No. 18-22 is procedural or substantive, we look to the familiar canons of construction and exercise our independent judgment. (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 896.) That process may involve up to three steps. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082.) First, we begin with the words of the ordinance themselves as "chosen language is the most reliable indicator of its intent." (*Ibid.*) "If the statutory language is clear and unambiguous, our task

12

is at an end, for there is no need for judicial construction." (*Id.* at p. 1083.) When the plain meaning of the text does not resolve the question, we proceed to the second step and turn to maxims of construction and extrinsic aids, including legislative history materials. (*Ibid.*) If ambiguity remains, we "must cautiously take the third and final step" and "apply 'reason, practicality, and common sense to the language at hand.' " (*Id.* at p. 1084.)

### A. *Language of Ordinance*

We read the express language of Ordinance No. 18-22 to contain at least some ambiguity. As detailed above, the text in the "Purpose and Findings" section indicates that the ordinance is aimed at the timing of eviction and thus may be procedural in nature. It states there is some "confusion" regarding how long tenant misconduct must continue before a landlord can initiate unlawful detainer proceedings to recover possession of a rental unit. It also appears to suggest that tenants should be given a "reasonable" amount of time where they have made an "innocent mistake" or are "able to correct the issue."

The text of the ordinance adding San Francisco Administrative Code section 37.9, subdivision (o), however, is framed differently. It states that the six grounds for at-fault evictions "shall not apply" unless tenants have been provided the additional warning and 10-day cure period. As defendant suggests, this language may be interpreted as regulating the substantive grounds for eviction.

We find *Birkenfeld*'s reasoning instructive in resolving this ambiguity. In *Birkenfeld*, the court analogized the Berkeley amendment's limitations on the grounds for eviction to the "substantive" defense in unlawful detainer proceedings of the breach of the implied warranty of habitability. (*Birkenfeld, supra,* 17 Cal.3d at p. 151.) Presumably, landlords could defeat

13

such a defense if they could show no breach had occurred. The eviction certificate requirement, however, raised a "procedural barrier" for landlords that precluded relief altogether. (*Birkenfeld*, at p. 151.) Landlords had no ability to "meet the defense" by showing they could have qualified for the certificate had they applied for it. (*Ibid*.) Similarly, here, Ordinance No. 18-22's supplemental 10-day notice requirement creates a barrier that precludes relief altogether without demonstrated compliance. Landlords cannot "meet the defense" by showing tenants would have been guilty of unlawful detainer had they been provided with the additional 10-day warning and cure period. (*Birkenfeld*, at p. 151.) The *effect* of Ordinance No. 18-22 is therefore procedural.

## B. *Legislative History*

The legislative history of Ordinance No. 18-22 shows that its *purpose* is also procedural. On January 10, 2022, San Francisco Supervisor Dean Preston introduced the ordinance at a Land Use and Transportation Committee hearing. Supervisor Preston stated that the Board had "come together to ban most evictions" during the COVID-19 pandemic, and it was now "even clearer that making an eviction a last resort is beneficial for all of us and not just a good idea during and as a response in COVID but also more permanently for the future of our city." He then explained: "Evictions really should be a tool of last resort and all too often, three days really flies by and tenants are in a position where they could have come up with rent money or otherwise solved the dispute with the landlord but they simply don't have enough time to access the resources and help they need." Supervisor Preston described the current state statutory law in section 1161 as "very harsh," that landlords can "commence the eviction process just three days later, even if the tenant comes up with the rent or cures the breach of contract on the

14

fourth day." He stated that the "additional 10 days would really be a game changer."

Supervisor Preston continued: "The fact is that as a society we don't resolve any other disputes like this. Home foreclosures, consumer debts, car repossessions, you name it. In no other situation does someone have just three days before losing their home or property. But for some reason, and the reasons are probably beyond our discussion today, but for some reason our system accepts three days as sufficient for resolving landlord-tenant disputes that lead to people losing their homes. So, if a warning period can keep people in their homes and resolve a pending dispute without litigation, I think we have a moral obligation to make that happen. And that's the purpose of this Ordinance." The Land Use and Transportation Committee voted unanimously to recommend the ordinance to the Board.

At the January 25, 2022 Board meeting, Supervisor Preston largely repeated his statements from the committee hearing. He again argued that evictions should be a "tool of last resort." He explained the timing under section 1161 in more detail: "As it stands right now, a landlord can demand rent, for example, on day one, and if a tenant can't come up with the rent within three days the tenant is subject to eviction. And that landlord can even evict if the tenant comes up with the full rent on the fourth or fifth day. And the same is true for many other types of eviction. This happens too often and it's just wrong." Supervisor Preston again stated that "for some reason our system accepts three days as sufficient for resolving landlord-tenant disputes," and that "ten days warning before eviction would be a game changer."

These statements evidence the procedural purpose of Ordinance No. 18-22. They criticize the "system" under Code of Civil Procedure section 1161

15

that "accepts three days" as sufficient notice to pay rent or perform and raise concern that three days "really flies by" and tenants "don't have enough time" under the law. They explain that the additional 10 days provided for in Ordinance No. 18-22 would be a "game changer" for tenants. For these reasons, they explain that Ordinance No. 18-22 extends the section 1161 timeline to create a "warning period" to "keep people in their homes and resolve a pending dispute without litigation."

In contrast with this procedural effect and purpose, defendant relies primarily on *Educators* and *Rental Housing* to argue that Ordinance No. 18-22 instead regulates the substantive grounds for eviction. While both cases "merit close examination," they do not change our conclusion.

### C. Educators *and* Rental Housing

In *Educators*, the same plaintiffs as in this action challenged an earlier San Francisco ordinance that created a defense to certain *no-fault* grounds for eviction[3] "if a child under the age of 18 or any educator resides in the unit, the child or educator is a tenant in the unit or has a custodial or family relationship with a tenant in the unit, the tenant has resided in the unit for 12 months or more, and the effective date of the notice of termination of tenancy falls during the school year." (*Educators*, *supra*, 20 Cal.App.5th at p. 513.) Plaintiffs raised the same preemption argument they make here: the ordinance was preempted by state law governing landlord-tenant notification procedures and timetables. (*Ibid.*)

---

[3] San Francisco Administrative Code section 37.9, subdivisions (a)(8) through (a)(12) of the Rent Ordinance provide that a landlord may recover possession of a rental unit for owner use or occupancy as principal residence, condominium conversion, permanent removal of rental unit from housing use, capital improvements, or substantial rehabilitation.

16

The appellate court concluded that the ordinance was not preempted under *Birkenfeld*. (*Educators*, *supra*, 20 Cal.App.5th at p. 519.) It explained: "The purpose of the Ordinance is to protect children from the disruptive impact of moving during the school year or losing a relationship with a school employee who moves during the school year. When tenants belong to this protected group (or have a custodial or familial relationship with a resident protected group member), they have a substantive defense to eviction; when they no longer belong to the group—because the regular school year has ended or will have ended by the effective date of the notice of termination— they no longer have a substantive defense." (*Id.* at p. 518.) The appellate court concluded that the ordinance created a substantive defense and thus was not preempted by the state unlawful detainer statutes. (*Id.* at p. 519.)

*Educators* recognized that, even though the ordinance was substantive under *Birkenfeld*, it had a "procedural *impact*" by "limiting the timing of certain evictions." (*Educators*, *supra*, 20 Cal.App.5th at p. 518.) But the appellate court emphasized that the ordinance did not "impose any procedural requirements: it does not require landlords to provide written notice or to do any other affirmative act." (*Ibid.*) Instead, the procedural impact was "necessary to 'regulate the substantive grounds' of the defense it creates." (*Ibid.*) Moreover, the appellate court rejected plaintiffs' argument that if the ordinance were upheld as substantive, " 'nothing would prevent San Francisco from mandating that all for-cause terminations occur on one day per year.' " (*Id.* at p. 519.) The court stated: "Although the issue is not before us, an ordinance limiting the timing of *all* evictions would appear to be preempted by the unlawful detainer statutes. Such an ordinance would not be imposed in order to regulate any substantive grounds for eviction, like the Ordinance. The Ordinance does not impose such a blanket requirement

17

independent of any substantive defenses to eviction.  Instead, the Ordinance is a substantive defense with an impact on timing." (*Ibid.*)

Here, unlike *Educators*, Ordinance No. 18-22 does not establish a substantive defense to eviction for a protected group.  Nor does it provide a substantive defense with only an "impact" on timing but no procedural requirement.  (*Educators*, *supra*, 20 Cal.App.5th at p. 518.)  Instead, its extension of the timeline for notice and opportunity to cure is entirely procedural.  It also imposes a specific procedural requirement:  landlords must affirmatively act by providing a written warning after good cause for eviction has been demonstrated but before notice of eviction can be given under section 1161.  As explained above, this process creates a procedural barrier precluding relief.  Moreover, while the dictum from *Educators* is of course not binding (*Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1120), it also supports our procedural conclusion because Ordinance No. 18-22 creates a blanket timing barrier across all six grounds for eviction where the tenant is at fault.  It does not regulate or distinguish between any one substantive ground.

In *Rental Housing*, landlords challenged an Oakland initiative adopted in its November 2002 general election.  (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 749.)  Prior to this initiative, Oakland's rent control ordinance did not have any "good cause" requirements for eviction.  (*Id.* at p. 750.)  The addition of these requirements was " 'crucial to the main purpose of the Ordinance:  to prevent landlords from evicting in order to undermine rent control.' " (*Id.* at p. 759.)  Indeed, "good cause" requirements for eviction were already in "many other cities' rent control laws." (*Id.* at p. 750.)

18

The initiative thus imposed a cause basis for eviction, enumerating various grounds for tenant fault similar to those already present in San Francisco's Rent Ordinance, including: nonpayment of rent, substantial breach of tenancy after written notice to cease, substantial damage to premises after written notice to cease, substantial disorderly conduct after written notice to cease, and tenant refusal to allow landlord access to rental unit after written notice to cease. (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 762.) And like San Francisco's Rent Ordinance before Ordinance No. 18-22 was passed, the provision authorizing eviction based on nonpayment of rent did not require any supplemental notice beyond Code of Civil Procedure section 1161.

But the landlords argued that the notice requirements for the other eviction grounds (breach of tenancy, damage, disorderly conduct, and refusal of access) were preempted under *Birkenfeld*. (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 762.) The appellate court disagreed, reasoning that the notice requirements limited "a landlord's right to initiate an eviction due to certain tenant conduct by requiring that the specified conduct continue after the landlord provides the tenant written notice to cease." (*Id.* at pp. 762–763.) *Rental Housing* thus concluded that the notice requirements "regulate the substantive grounds for eviction, rather than the procedural remedy available to the landlord once grounds for eviction have been established." (*Id.* at p. 763.)

For the first time on appeal, the landlords also argued that the notice provisions were "void for vagueness" because they did not "specify the time a tenant must be provided to cure the violation before a landlord may commence an eviction." (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 763 & fn. 17.) The appellate court concluded that any "arguable vagueness" had

19

been clarified by amendments to eviction regulations adopted by Oakland's Rent Board specifying that "a warning notice 'must give the tenant at least 7 days after service to cure the violation.' " (*Id.* at pp. 763–764.)

We disagree with the trial court to the extent it felt *Rental Housing* precluded it from finding Ordinance No. 18-22 preempted in its entirety. The appellate court's findings as to the Oakland initiative in *Rental Housing* are based on important distinctions from the instant case. First, as a preliminary matter, the appellate court in *Rental Housing* was clear that it considered "only the text of the measure" and was presented with arguments for the first time on appeal. (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 752.) As described above, we find not only the text but also the legislative history of Ordinance No. 18-22 instructive in analyzing the parties' preemption arguments raised here and in the trial court.

Second, the Oakland initiative set forth a substantive scheme by which "a landlord must be 'able to prove' one of 11 specified grounds for eviction." (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 755.) The Oakland initiative explicitly required one of the enumerated grounds to be the landlord's " 'dominant motive for recovering possession and the landlord acts in good faith in seeking to recover possession.' " (*Id.* at p. 759.) It further explained the need for "good faith, honest intent, and no ulterior motive." (*Ibid.*) But importantly, only *some* of the grounds where a tenant is at fault contained notice requirements. (*Id.* at p. 762 [citing sections 6A(2), 6A(4), 6A(5), and 6A(7) of Oakland initiative].) Nonpayment of rent, for example, had no such requirement.

It was in this context of the Oakland initiative's first-time implementation of substantive "good cause" requirements that *Rental Housing* considered a preemption challenge to the particular "good cause"

20

requirements that included "warning notices" to " 'be served by the landlord prior to a notice to terminate tenancy.' " (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 762.) These clearly substantive elements of the Oakland initiative are not at issue in our consideration of Ordinance No. 18-22. As explained above, the "good cause" grounds for eviction had been enumerated in San Francisco Administrative Code section 37.9, subdivision (a) of the Rent Ordinance for over 40 years before Ordinance No. 18-22 was enacted. Moreover, Ordinance No. 18-22 imposed a "blanket" notice requirement across all six grounds for eviction where the tenant is at fault. (*Educators*, *supra*, 20 Cal.App.5th at p. 519.) In contrast, the appellate court in *Rental Housing* was tasked with deciding whether notice requirements particular to certain grounds of eviction regulated those grounds. (*Rental Housing*, at p. 763.)

Third, unlike Ordinance No. 18-22, the notice requirements in the Oakland initiative did not specify *any* particular timeline, let alone one that intentionally extended the Code of Civil Procedure section 1161 framework. Nor did it expressly include an extended notice requirement because it took issue with the three-day notice standard of section 1161. Unlike Ordinance No. 18-22, there is no indication that the Oakland initiative was proposed because three days "really flies by" and tenants "don't have enough time" under the law. As a result, the only argument presented (for the first time) to the appellate court in *Rental Housing* regarding the Oakland initiative's impact on timing challenged the *vagueness* of the notice provisions, which the court reasonably rejected in view of related rent board specifications. (*Rental Housing*, *supra*, 171 Cal.App.4th at pp. 763–764.) Therefore, the appellate court in *Rental Housing* had no occasion to factor timing—or explicitly procedural motivations—into its *Birkenfeld* analysis. (See *Educators*, *supra*,

21

20 Cal.App.5th at p. 518 [noting that *Rental Housing* "did not discuss the impact on timing in its preemption discussion"].)

In short, unlike the ordinance in *Educators*, Ordinance No. 18-22 did not add a substantive defense to eviction for a protected group without imposing any affirmative procedural requirement on landlords. (*Educators*, *supra*, 20 Cal.App.5th at p. 518.) Unlike the initiative in *Rental Housing*, Ordinance No. 18-22 did not add substantive "good cause" grounds for eviction with unspecified notice requirements contained in some of those grounds. (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 762.) Instead, Ordinance No. 18-22 imposed a procedural notice requirement on landlords and created a procedural barrier across all grounds for at-fault evictions. It did so with the explicit purpose of adding more days to the three-day timeline under section 1161. We thus conclude that Ordinance No. 18-22 is procedural under *Birkenfeld* and return to plaintiffs' arguments regarding preemption by direct contradiction and implied field preemption.

## IV.  Ordinance No. 18-22 is Preempted

Plaintiffs argue that Ordinance No. 18-22 directly contradicts the three-day notice period provided by Code of Civil Procedure section 1161. We agree. The ordinance plainly prohibits a landlord from proceeding under the state statutory timeline by requiring the additional 10-day warning and cure period. (*Riverside*, *supra*, 56 Cal.4th at p. 743.) Defendant does not appear to dispute this difference in timing but instead repeats its argument that there is no conflict because, under *Birkenfeld*, Ordinance No. 18-22 regulates the substantive grounds for eviction. As explained above, the text and history of Ordinance No. 18-22 do not support this argument.

Defendant's citations to *Fisher* and *Foster v. Britton* (2015) 242 Cal.App.4th 920 (*Foster*) do not alter this conclusion. In *Fisher*, landlords

22

challenged Berkeley's rent control ordinance on a variety of grounds, including that its rent withholding provisions—allowing a tenant to withhold rent if a landlord violated rent ceilings or failed to register the rental unit— were preempted by section 1161, subdivision (1). (*Fisher*, *supra*, 37 Cal.3d at p. 705.) The California Supreme Court concluded that these withholding provisions presented a permissible substantive defense to eviction and thus did not conflict with section 1161. (*Fisher*, at p. 707.) Again, unlike the additional 10 days required by Ordinance No. 18-22, landlords could presumably "meet" this defense in Berkeley's ordinance by showing there were no grounds for withholding rent. (*Birkenfeld*, *supra*, 17 Cal.3d at p. 151.)

In *Foster*, a landlord challenged a San Francisco regulation prohibiting tenant evictions for violation of an obligation not included in the original rental agreement, unless the change was authorized by the Rent Ordinance, other law, or accepted by the tenant. (*Foster*, *supra*, 242 Cal.App.4th at p. 925.) The appellate court rejected the landlord's preemption argument because the regulation affected "substantive grounds on which a landlord may evict a tenant" and did not "interfere with the procedural protections offered by state law." (*Id.* at p. 932.) Again, unlike the regulation in *Foster*, Ordinance No. 18-22 interferes with the notice procedure set forth in Code of Civil Procedure section 1161 and is antithetical to the "relatively simple and speedy remedy" the state unlawful detainer statutes provide. (*Birkenfeld*, *supra*, 17 Cal.3d at p. 151.)

We also agree with plaintiffs that Ordinance No. 18-22 is impliedly preempted as state statutory law has fully occupied the field of landlord-tenant notification timelines. As a preliminary matter, we acknowledge the general guidance that " 'courts are cautious in applying the doctrine of

23

implied preemption'" without clear legislative intent. (*T-Mobile West LLC v. City and County of San Francisco* (2016) 3 Cal.App.5th 334, 350.) But we disagree with defendant's argument that there is a *presumption* against preemption. "[W]hen local government regulates in an area over which it traditionally has exercised control . . . California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149.) Defendant's argument *assumes* that Ordinance No. 18-22 is not procedural but instead regulates the substantive grounds for eviction, an area over which local government has traditionally exercised control under its police power. We have already rejected this assumption.

As for the Legislature's implied intent to fully occupy the field, we find *Tri County* and *Channing Properties v. City of Berkeley* (1992) 11 Cal.App.4th 88 (*Channing*) instructive. In *Tri County*, landlords challenged a Santa Clara ordinance requiring 60-day notice of any rental increase for a monthly tenant versus the 30-day notice required by state law under section 827. (*Tri County*, *supra*, 196 Cal.App.3d at p. 1290.) The appellate court explained that its inquiry "must therefore determine whether the Legislature has preempted the field of notification in landlord-tenant relationship." (*Id.* at p. 1293.)

In addition to Code of Civil Procedure section 1161, the appellate court identified at least nine other state statutes that provide timelines for landlord-tenant notice. (*Tri County*, *supra*, 196 Cal.App.3d at p. 1297, citing Civ. Code, § 789 [30 days' notice to terminate tenancy at will]; *id.* § 791 [three days' notice for re-entry]; *id.* § 827, subd. (a) [30 days' notice to change terms of lease]; *id.* § 1942, subd. (b) [30 days' notice regarding tenant repairs and

24

deduction of expenses from rent]; *id.* § 1942.3, subd. (a)(3) [failure to correct substandard condition after 60 days' notice creates rebuttable presumption against landlord in unlawful detainer action]; *id.* § 1942.4, subd. (a) [failure to correct substandard condition after 35 days' notice precludes landlord from filing unlawful detainer action]; *id.* § 1942.5, subd. (a) [lessor retaliation for lessee notice of complaint regarding tenantability precludes lessor from recovering possession of dwelling for 180 days]; *id.* § 1951.3, subd. (c) [lessor may give notice of belief of abandonment to lessee when rent has been due and unpaid for at least 14 consecutive days]; § 1951.7, subd. (b) [notice to lessee upon reletting of property].)

The appellate court explained that landlord-tenant relationships "are so much affected by statutory timetables governing the parties' respective rights and obligations that a 'patterned approach' by the Legislature appears clear" and "reveals that the timing of landlord-tenant transactions is a matter of statewide concern not amenable to local variations." (*Tri County*, *supra*, 196 Cal.App.3d at pp. 1296, 1298.) *Tri County* determined that the ordinance adding 30 days to the notice timeline was not like the substantive eviction restrictions from *Birkenfeld*. (*Tri County*, at p. 1296.) Instead, it "adopts the same purpose as the statute, i.e., appropriate notification, but then changes the statewide chronology to suit its own agenda." (*Ibid.*) Here, as in *Tri County*, Ordinance No. 18-22 "adopts the same purpose" as section 1161 in setting the notification timeline but changes the three-day statewide chronology to "suit its own agenda," namely to provide tenants with an additional 10 days of notice and opportunity to cure. (*Tri County*, at p. 1296.)

Similarly, in *Channing*, a landlord challenged certain provisions of the Berkeley Municipal Code, including its requirement that landlords provide six months' notice before removing their property from the rental housing

25

market.  (*Channing*, *supra*, 11 Cal.App.4th at p. 91.)  The landlord argued that this provision was preempted because it conflicted with the 60-day notice requirement under state law.  (*Id*. at p. 94.)  We agreed, citing *Tri County*'s determination regarding implied field preemption of landlord-tenant notification timetables, and reasoning that Berkeley had "made no showing that its six-month notice requirement was aimed at preventing abuse of the right to evict tenants; on the contrary, the findings discussed above demonstrate that the City simply wishes to afford tenants more time to locate replacement housing before their units are withdrawn from the market. Worthy as this goal may be, it conflicts with the notice provisions of the [Ellis] Act, which were calculated to achieve the same purpose, and cannot be sustained." (*Channing*, at p. 97.)  As in *Channing*, the language and history of Ordinance No. 18-22 show it was aimed to give tenants more time before unlawful detainer proceedings could be initiated.  It achieved the same procedural purpose regarding this notification timeline but conflicts with section 1161 by adding to that timeline.

Defendant attempts to distinguish *Tri County* and *Channing* by arguing that they deal with other types of landlord-tenant notification, not notice for " 'a material breach of tenancy.' "  But *Tri County* was explicit about the scope of its analysis:  it explained that the "time of notification, not the amount of the [rental] increase, is the subject of the Ordinance" and the question presented was "whether the Legislature has preempted the field of notification in landlord-tenant relationships." (*Tri County*, *supra*, 196 Cal.App.3d at p. 1293.)  *Tri County* analyzed the state statutory scheme and concluded that its patterned approach showed such intent.  (*Id*. at p. 1298.) *Tri County* and *Channing* determined that the local legislation impermissibly

26

interfered with that scheme by creating a longer notice timeline. (*Tri County*, at p. 1298; *Channing*, *supra*, 11 Cal.App.4th at p. 97.) So too here.

In sum, the trial court did not err in concluding that Ordinance No. 18-22 conflicts with Code of Civil Procedure section 1161 through both direct preemption and implied field preemption. We conclude, however, that this preemption invalidates not just the provision regarding notice for nonpayment of rent, but the entire ordinance.

## DISPOSITION

The judgment is reversed insofar as it concluded that Ordinance No. 18-22 was not preempted by state law to the extent it changed the required notice period for unlawful detainers/evictions based on the grounds enumerated in San Francisco Administrative Code section 37.9, subdivisions (a)(2) through (a)(6) of the Rent Ordinance. The judgment is otherwise affirmed. The superior court shall issue a writ of mandate commending defendant City and County of San Francisco to not enforce or apply Ordinance No. 18-22. Plaintiffs San Francisco Apartment Association and Small Property Owners of San Francisco Institute are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

_____

DESAUTELS, J.


We concur:


_____

STEWART, P.J.


_____

RICHMAN, J.


*San Francisco Apartment Association et al. v. City and County of San Francisco* (A166228, A166359)

28

Trial Court:                    San Francisco Superior Court

Trial Judge:                    Hon. Charles F. Haines


Attorneys for Defendant
and Appellant:                  David Chiu
                                City Attorney

                                Wayne K. Snodgrss
                                Deputy City Attorney


Attorneys for Plaintiffs
and Appellants:                 Zacks & Freedman, PC
                                Andrew M. Zacks
                                Scott A. Freedman
                                Emily Lowther Brough